# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| TANISHA GIBSON, on her own behalf and as Supervised Administrator of the Estate of PAUL O'NEAL, deceased, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 16 CV 7745 |
| OFFICER JOSE DIAZ (Star #15610), and the CITY OF CHICAGO, a municipal corporation, | ) ) ) ) | Judge Lee<br><br>Magistrate Judge Rowland |
| Defendants. | ) | JURY DEMAND |

## THIRD AMENDED COMPLAINT

**NOW COMES** the Plaintiff, TANISHA GIBSON, by and through her attorneys, Erickson & Oppenheimer, complaining against the Defendant, OFFICER DIAZ, individually, and the CITY OF CHICAGO, a municipal corporation, as follows:

## INTRODUCTION

1) This action, arising out of the death of Paul O'Neal ("Decedent"), is brought pursuant to 42 U.S.C. §1983 to address deprivations of Decedent's rights under the Constitution of the United States.

## JURISDICTION

2) The jurisdiction of this Court is invoked pursuant to the Civil Rights Act, 42 U.S.C. §§ 1983 and 1985; the Judicial Code 28 U.S.C. §§ 1331 and 1343(a); the Constitution of the United States; and pendent jurisdiction as provided under U.S.C. § 1367(a).

## VENUE

3) Venue is proper under 28 U.S.C. Section 1391 (b). All of the parties reside in this judicial district and the events described herein all occurred within this district.

## THE PARTIES

4) The Plaintiff, Tanisha Gibson, is the mother of the Decedent.

5) The Defendant, Officer Diaz was at all relevant times a duly appointed police officer of the City of Chicago and at all relevant times was acting within his scope of employment and under color of law.

6) Defendant City of Chicago is a municipal corporation duly incorporated under the laws of the State of Illinois, and is the employer and principal of Defendant Diaz as well as Officers Torres, Coughlin, and Baker.

## FACTS

7) On or about July 28, 2016, the Decedent was in a vehicle in the area of East 74th Street and South Merrill Avenue in Chicago, Illinois.

8) A minor passenger was in the vehicle as well.

9) Officers Jose Torres and Michael Coughlin engaged in a motor vehicle pursuit of Decedent's vehicle.

10) The pursuit by Torres and Coughlin violated Chicago Police Department general orders governing the circumstances under which police officers may engage in motor vehicle pursuits.

11) At all times stated, the neighborhood surrounding the intersection of East 74th St. and South Merrill Ave. was a residential neighborhood.

12) At the time of the motor vehicle chase involving Decedent, Defendant Diaz was aware of the residential character of the neighborhood.

13) The three other officers involved in the motor vehicle pursuit, Officers Torres, Coughlin, and Baker, were also aware of the residential character of the neighborhood at the time of the chase.

14) Officer Torres operated his squad car the wrong way down Merrill St. knowing it was a one-way street in a residential neighborhood.

15) Officer Torres stopped his vehicle in the middle of the road, in harm's way and in an attempt to box in the Decedent, in violation of Chicago Police Department general orders.

16) Prior to stopping, Officer Coughlin had unholstered his weapon.

17) Thereafter, Officers Torres and Coughlin exited their vehicle.

18) Officer Coughlin pointed his firearm in the direction of Decedent, who evaded by maneuvering his vehicle between the squad car and a parked vehicle.

19) Officer Coughlin fired his weapon at Decedent's vehicle approximately nine times. On information and belief, at least two bullets struck the officers' vehicle. Officer Coughlin's firing path crossed Officer Torres.

20) Officer Coughlin fired several bullets at Decedent's fleeing vehicle, striking the vehicle at least once. Officer Torres fired one bullet at Decedent's vehicle.

21) The shots fired by Officers Torres and Coughlin were in violation of Chicago Police Department general orders governing the circumstances under which firing at a moving vehicle is permissible.

22) Several of the shots by Coughlin and the shot by Torres were fired directly down Merrill Street in the direction of Decedent's vehicle (after it had passed them and was moving away from them) and the vehicle driven by Officer Baker.

23) Officers Torres and Coughlin fired their weapons with no regard for the safety of their fellow officers, the other occupant in Decedent's vehicle, or other motorists and members of the public in the residential area.

24) Immediately subsequent to firing at Decedent's vehicle, either Officer Torres or Coughlin radioed to the effect that shots were fired by the police.

25) A second police vehicle, driven by Officer Baker and in which Defendant Diaz was a passenger, drove the wrong way down Merrill St. and approached Decedent's vehicle as it fled from Officers Coughlin and Torres.

26) Officer Baker violated Chicago Police Department general orders governing the circumstances under which police officers may engage in motor vehicle pursuits and failed to take evasive action reasonably necessary to avoid a collision.

27) Decedent exited the vehicle and fled into a yard.

28) Defendant Diaz gave chase on foot.

29) During this incident, no police officer ever observed a firearm or other handheld weapon in possession of Decedent.

30) Without lawful justification or excuse, Defendant Diaz discharged his firearm at Decedent approximately five times.

31) Prior to shooting at Decedent, Defendant Diaz did not know if Decedent was armed, and Decedent was in fact unarmed.

32) Decedent was struck once with Defendant Diaz' firearm, nearly directly in the middle of Decedent's back, approximately twenty inches from the top of his head and three inches right of the posterior midline.

33) After Decedent was shot and while he was laying on the ground bleeding and being handcuffed, Defendant Diaz kicked Decedent in the upper body without lawful justification or excuse.

34) Said actions of Defendant Diaz were intentional, willful and wanton and/or committed with reckless indifference and disregard for the Decedent's rights.

35) Said actions of Defendant Diaz were objectively unreasonable under the circumstances.

36) As a result of Defendant Diaz's actions as set forth hereto, the Decedent suffered emotional and physical damages, including death.

## COUNT I—EXCESSIVE FORCE (Section 1983)

37) Plaintiff hereby incorporates all previous paragraphs as though fully set forth herein.

38) The actions of Defendant Diaz as set forth hereto constitute excessive force against the Decedent, thus violating his rights under the United States Constitution and 42 U.S.C. Section 1983.

39) As a direct and proximate consequence of Defendant Diaz's conduct, the Decedent suffered damages, including without limitation violations of his constitutional rights and emotional and physical pain and suffering.

**WHEREFORE**, the Plaintiff prays for judgment against Defendant Diaz for an award of reasonable compensatory and punitive damages, plus attorney's fees and costs.

## COUNT II– BATTERY (state law claim)

40) Plaintiff hereby incorporates all previous paragraphs as though fully set forth herein.

41) The conduct of Defendant Diaz resulted in offensive physical contact with the Decedent made without his consent, thus constituting battery under Illinois law.

42) Defendant Diaz's actions proximately caused the Decedent to suffer injuries, including without limitation great bodily harm and death as well as pain and suffering.

**WHEREFORE**, the Plaintiff prays for judgment against Defendant Diaz for an award of reasonable compensatory and punitive damages, plus costs.

### COUNT III—WRONGFUL DEATH (state law claim)

43) Plaintiff hereby incorporates all previous paragraphs as though fully set forth herein.

44) The actions of Defendant Diaz as set forth hereto caused the wrongful death of the Decedent, in violation of ILCS 740 180/1 et seq.

45) Defendant Diaz's actions proximately caused the Decedent to suffer injuries, including without limitation great bodily harm and death as well as pain and suffering.

46) As a result of Defendant Diaz's conduct, the Estate has suffered injury, including without limitation incurring medical and/or funeral expense and the loss of society and companionship.

**WHEREFORE**, the Plaintiff prays for judgment against Defendant Diaz for an award of reasonable compensatory and punitive damages, plus costs.

### COUNT IV—SURVIVAL ACTION (state law claim)

47) Plaintiff hereby incorporates all previous paragraphs as though fully set forth herein.

48) After the Decedent was shot, he survived for a period of time during which he experienced conscious pain and suffering.

**WHEREFORE**, the Plaintiff prays for judgment against Defendant Diaz for an award of reasonable compensatory and punitive damages, plus costs.

### COUNT V—FAMILY EXPENSE ACT (state law claim)

49) Plaintiff hereby incorporates all previous paragraphs as though fully set forth herein.

50) As a direct and proximate cause of Defendant Diaz's actions which caused the death of the Decedent, Plaintiff Tanisha Gibson, as mother of the deceased, Paul O'Neal, has been obligated to incur financial expenses, including without limitation funeral and burial costs.

**WHEREFORE**, the Plaintiff prays for judgment against Defendant Diaz for an award of reasonable compensatory and punitive damages, plus costs.

### COUNT VI—WILLFUL AND WANTON MISCONDUCT (state law claim)

51) Plaintiff hereby incorporates all previous paragraphs as though fully set forth herein.

52) At all relevant times, Defendant Diaz and Officers Torres, Coughlin, and Baker had a duty to refrain from acting in a willful and wanton manner.

53) At all relevant times, Defendant Diaz and Officers Torres, Coughlin, and Baker engaged in a course of action which showed an actual or deliberate intention to cause harm or which, if not intentional, showed an utter indifference to or conscious disregard for the safety of others or their property.

54) The acts of Defendant Diaz and Officers Torres, Coughlin, and Baker were willful, wanton, and executed with a conscious disregard for the safety and property of others.

55) In violation of their duty, Defendant Diaz and Officers Torres, Coughlin, and Baker recklessly committed without limitation one or more of the following willful and wanton acts or omissions:

    a. Engaged in a vehicle pursuit when factors, including without limitation the nature of the area, traveling the wrong way down a one-way street, and the

      non-violent nature of the crime alleged, made readily apparent the unreasonable safety risks to others;

   b. Engaged in a vehicle pursuit in violation of Chicago Police Department general orders;

   c. Failed to self-terminate the pursuit in violation of Chicago Police Department general orders;

   d. Discharged their weapons at Decedent's vehicle in violation of Chicago Police Department general orders and in reckless disregard of the safety of others;

   e. Failed to take evasive action when necessary in order to avoid a collision with Decedent's vehicle.

56) The City, through their agents, Defendant Diaz and Officers Torres, Coughlin, and Baker, was guilty of willful and wanton misconduct as described in subparagraphs (a) through (e) above.

57) As a direct and proximate cause of the Defendants' willful and wanton acts and reckless conduct as set forth hereto, Decedent suffered damages.

**WHEREFORE**, the Plaintiff prays for judgment against Defendant Diaz and Defendant City of Chicago, jointly and severally, for an award of reasonable compensatory and punitive damages (punitive damages against Diaz only), plus costs.

### COUNT VII—*MONELL* CLAIM
### (against Defendant City of Chicago)

58) Plaintiff hereby incorporates all previous paragraphs as though fully set forth herein.

59) At all times relevant, Plaintiff enjoyed and possessed a right under the Fourth Amendment to the Constitution to be free from unreasonable force by police.

60) Plaintiff's injuries were proximately caused by policies and practices on the part of the Chicago Police Department, which falls under the authority of Defendant City of Chicago.

61) In July 2016, and for a period of time prior thereto, Defendant City of Chicago had notice of a widespread practice by their employees under which citizens, such as Decedent, were routinely subjected to excessive force.

62) The Chicago Police Department's excessive use of force is enabled by the code of silence.

63) The City of Chicago has also engaged in a widespread practice of its employees testifying dishonestly, making false reports, hiding and destroying evidence, failing to require official reports of official police activities, and/or failing to require complete and honest reports of police activities.

64) These practices are directly encouraged at every level of law enforcement, from the Corporation Counsel's Office, to IPRA, to IAD, to the Cook County State's Attorneys' Office, and infects the City's relationship with its police, including but not limited to the employment contract with the Fraternal Order of Police.

65) The failure to require police reports that are complete and honest encourages officers not to report the misconduct of other officers and creates a culture that enables misconduct.

66) Specifically, in this case, Defendant Diaz, although equipped with a body camera, failed to record his encounter with the Decedent.

67) Defendant Diaz has reported that one of the reasons he shot Decedent was because Decedent reached for his waistband. This report is false. Chicago police officers have a widespread practice of falsely reporting specific lies that work to cast doubt

over mistakes in their police work. That a suspect "reached" for his "waistband" is one such lie. Unarmed, Decedent had no reason to reach for his waistband.

68) Furthermore, Defendant City of Chicago fails to adequately investigate and discipline officers who have conducted wrongful shootings. Likewise, the City fails to discipline their employees when they commit perjury and create false reports.

69) IPRA is so ineffective, officers can be heard in recordings after the shooting of Decedent lamenting the expected 30 days of desk duty that will be assigned for causing a wrongful death.

70) The City has a widespread practice of failing to adequately document claims by officers about police involved shootings.

   a. On information and belief, Officer John Fitzgerald shot Aaron Harrison in 2007 after garnering 25 misconduct complaints between 2001 and 2006. Fitzgerald was awarded the Superintendent's Award of Valor in 2010 for the incident. IPRA ruled the shooting justified, based largely on Fitzgerald's account that Harrison was attempting to shoot him while running away and a gun recovered on the scene. However, multiple witnesses asserted Harrison was unarmed. In 2013, the City settled the civil suit filed by Harrison's family for $8.5 million.

   b. On information and belief, in 2005, Officer Rick Caballero shot and killed Ben Romaine, who was driving away from Caballero. Despite a court order ordering that Romaine's vehicle be preserved for evidence, the Chicago Police Department destroyed the vehicle. The City also altered dispatch evidence. In his original conversation with the radio dispatcher, Caballero's dialogue was noted in an initial transcript as "He just, he just uh, he just ran so I took a shot

at him." Later, after a deposition in which Caballero allegedly claimed his words were "he just rammed us," not "he just ran," an investigator for the Office of Professional Standards changed the record of the dispatch call to "he just, he just uh, he just [unintelligible] so I took a shot at him." Caballero was later awarded the Superintendent Award for Valor for the incident. The City settled the civil suit brought by the family.

c. On information and belief, in 2009, Officer Darren Wright shot and killed Corey Harris in the back. The City settled the civil suit for $1.2 million.

d. On information and belief, Officer Michael St. Clair shot William Hope multiple times in the chest in broad daylight while Hope was in his car. In 2012, a federal jury found against the officers and awarded the family $4.6 million.

e. On information and belief, in 2015, after officers shot Laquan McDonald sixteen times and killed him, the City settled the case for $5 million without any lawsuit being filed. Nine of the shots hit McDonald in the back. Chicago police officers went in a Burger King restaurant located fewer than 100 yards from where 17-year old Laquan McDonald was shot and killed and 86 minutes of surveillance footage (encompassing the time McDonald was shot and killed) were deleted, according to the restaurant's manager and McDonald's attorney.

71) On information and belief, former IPRA investigator Lorenzo Davis was terminated from his employment in 2015 because he determined that several police shootings were unjustified. Davis' team of investigators for IPRA found as many as six incidents where the officer was not justified in shooting the civilian

victim. Davis' supervisor at IPRA directed him to change his finding and determine that each shooting was justified. Davis was told that if he did not change his finding, he was insubordinate and would face discipline.

72) CPD detectives assigned to investigate police shootings provide FOP representatives access to and information about police involved shootings. That access and information is passed, often under dubious notions of legal privilege, between lawyers and accused CPD officers. In this manner, CPD officers can craft false narratives about police shootings that do not conflict.

73) In furtherance of this practice, CPD and IPRA permit witness and accused officers to be represented by the same counsel and FOP representatives during official statements, who take breaks from being on the record to set their clients' stories straight.

74) In the same vein, officers who use deadly force and take the life of a citizen are not required to draft a contemporaneous narrative of what occurred that justified the shooting or otherwise give a recorded and on-the-record statement about what occurred. The City does not require officers who take the lives of citizens to make narrative reports about the occurrence until after the officer, through his representatives [legal counsel and/or the Fraternal Order of Police] have an opportunity to review all reasonably available evidence so that the police can tell stories that do not conflict with themselves or the evidence.

75) Rather than discipline misconduct and require reporting, the City of Chicago circles the wagons. This widespread practice is allowed to flourish because Defendant City directly encourages, and is thereby the moving force behind, the very type of misconduct at issue by failing to adequately train, supervise, and control officers, and

 by failing to adequately investigate, punish and discipline prior instances of similar misconduct, thus directly encouraging future abuses such as those affecting Decedent.

76) In this way, Defendant City violated Decedent's rights by maintaining policies and practices that were the moving force for the foregoing constitutional violations.

77) The above-described widespread practices, so well-settled as to constitute de facto policy in the City, and were able to exist and thrive because governmental policymakers with authority over the same, exhibited deliberate indifference to the problem, thereby effectively ratifying it.

78) Decedent's injuries were caused by employees of the City, including but not limited to the individually named Defendant officer, who acted pursuant to City policy and practices in engaging in the misconduct described in this Count.

 WHEREFORE, pursuant to *Monell v. N.Y. Dep't of Soc. Servs.,* 436 U.S. 658 (1978), Plaintiff demands judgment against Defendant City of Chicago for an award of reasonable compensatory damages, plus attorney's fees and costs and any other relief this Court deems just.

## COUNT VIII—SPOLIATION (state law claim)

79) Plaintiff hereby incorporates all previous paragraphs as though fully set forth herein.

80) At the time of the encounter, Defendant Diaz was wearing a body camera issued by the Chicago Police Department.

81) Defendants Diaz and the City of Chicago have taken a position claiming that Defendant Diaz's body camera did not record his shooting of Decedent.

82) Defendants Diaz and the City of Chicago have taken a position claiming that Defendant Diaz's body camera only captured post-shooting events.

83) On information and belief, Defendant Diaz either failed to follow Chicago Police Department orders regarding the use and activation of his body camera or Defendants Diaz and the City of Chicago lost or destroyed the video evidence of the shooting from Diaz's camera.

84) The video evidence at issue from Diaz's body camera constitutes material evidence supporting Plaintiff's underlying claims in this action.

85) In the event that the finder of fact in this case is unable to determine whether or not Defendant Diaz acted lawfully in shooting and killing Decedent or finds against Plaintiff on Plaintiff's underlying claims, Plaintiff pleads in the alternative to the prior underlying counts that such loss of evidence proximately caused her inability to prove her underlying claims.

**WHEREFORE**, the Plaintiff prays for judgment against Defendants Diaz and the City of Chicago, jointly and severally, for an award of compensatory and punitive damages (punitive damages against Diaz only), plus attorney's fees and costs.

## COUNT IX—INDEMNIFICATION

86) Plaintiff hereby incorporates all previous paragraphs as though fully set forth herein.

87) At all relevant times, Defendant City of Chicago was the employer of Defendant Diaz.

88) Defendant Diaz committed the acts alleged above under the color of law and in the scope of his employment as an employee of the City of Chicago.

89) In Illinois, public entities are directed to pay for any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

90) As a proximate cause of Defendant Diaz's unlawful acts, which occurred within the scope of his employment, Decedent was injured.

**WHEREFORE**, should the individual Defendant be found liable on one or more of the federal claims set forth above, Plaintiff demands that Defendant City of Chicago be found liable for any compensatory judgment Plaintiff obtains against said Defendant, plus attorney's fees and costs awarded and such other and additional relief that this Court deems equitable and just.

## COUNT X—*RESPONDEAT SUPERIOR*

91) Each of the paragraphs above is incorporated by reference as though fully stated herein.

92) In committing the acts alleged in the preceding paragraphs, Defendant Diaz was an agent of the City of Chicago and was acting at all relevant times within the scope of his employment and under color of law.

93) Defendant City of Chicago is liable as principal for all torts committed by its agents.

**WHEREFORE**, should the individual Defendant be found liable on one or more of the state claims set forth above, Plaintiff demands that, pursuant to *respondeat superior*, Defendant City of Chicago be found liable for any compensatory judgment Plaintiff obtains against said Defendant(s), as well as costs awarded.

## JURY DEMAND

The Plaintiff requests a trial by jury.

## NOTICE OF ASSIGNMENT

Please be advised that all rights relating to attorney's fees have been assigned to counsel.

                                            Respectfully submitted,

                                            <u>/s/ Michael Oppenheimer</u>

Erickson & Oppenheimer, Ltd.
223 W. Jackson, Suite 200
Chicago, IL 60606
312-327-3370